SWANK *v.* EDMONDS.

BRIMSON *v.* BRIMSON.

5-1280

Opinion delivered January 20, 1958.

5-1424                                    309 S. W. 2d 192

Opinion delivered January 27, 1958.

*Digby & Tanner,* for appellant.

*Catlett & Henderson,* for appellee.

CARLETON HARRIS, Chief Justice. James R. Swank and Cecil Ray Edmonds, doing business as Edmonds & Swank, were partners in the business of constructing dwellings in the state of Colorado. In January, 1955, the two men, having become interested in establishing a dog track in Arkansas, came to Little Rock and contacted the chairman of the State Racing Commission relative to acquiring a permit. It was agreed between Edmonds, and Swank, a Denver businessman and rancher, that the two should bear equally all expenses[1] incident to promoting the track, and that Swank would receive 50 per cent of Edmonds' net interest in a company to be organized. The two returned to Denver, and Edmonds advertised in the Denver Post for people who would be interested in purchasing stock in a race track, advertising costs being borne equally by both parties. Edmonds returned to West Memphis, Arkansas, and in the latter part of March, 1955, Swank and Jules Singer, a Denver attorney, came to West Memphis, and the

---

[1] Swank's evidence showed that he made a total expenditure of about $1,100 toward expenses.

three men incorporated the Southland Racing Corporation. On April 4th, Swank and Edmonds entered into a written agreement confirming the aforementioned verbal agreement. This was the last direct contact between the two, and Edmonds thereafter spent most of his time in Arkansas, while Swank remained in Colorado. Shortly thereafter, Edmonds sold his interest in the Swank and Edmonds Construction Company to one William T. Kerns. On May 6th, Kerns obtained a release from Swank releasing "C. R. Edmonds and every other person, firm or corporation from any and all claims which I may have or profess to have in and to any stock or other interest in the Southland Racing Corporation * * *" and specifically relinquishing any claims which Swank might have arising from the letter dated April 4, 1955, wherein Swank was to accept a 50 per cent interest in the stock retained by Edmonds. In consideration of the release, Kerns delivered to Swank a letter advising that he would (1) give Swank $3,500 (2) exert his best efforts to secure a racing permit in Arkansas[2], and if successful, assign to Swank 80 per cent of his interest therein, and (3) not relinquish possession of the release until Kerns had secured a contract for the construction of Southland Racing Corporation. Swank contends that Kerns did not comply with any of the provisions. On July 15, Kerns entered into a written agreement with Edmonds wherein Kerns agreed, in consideration of the assignment to him of 15,000 shares of common stock in Southland, to assign to Edmonds the aforementioned release and relinquishment of Swank's interest in the Southland Corporation. In August, Swank went to the office of Singer in Denver, and in consideration of the issuance of 6,000 shares of Southland Racing Corporation stock, executed a second release. The stock was later sent to Swank[3], and sold by him for approximately $5,000. In October, 1956, Swank instituted suit against Edmonds, alleging that the releases had been obtained from him by fraud, and asking that he be awarded 50 per cent of Edmonds' net

[2] Not referring to Southland.

[3] The stock was sent later because it was promotional stock and could not be sold until registered by the SEC.

interest in Southland. Upon trial, the court dismissed Swank's complaint for want of equity. From such decree comes this appeal.

Appellant's principal argument for reversal is based upon a contention that Edmonds, Kerns, and Singer entered into a conspiracy to defraud him of his interest in Southland Racing Corporation. A conspiracy was not alleged in the complaint, nor were Kerns and Singer made parties to the action; in fact, their names do not appear in the pleadings. The complaint simply alleges that the acts of fraud, trickery, and deceit were committed by Edmonds, "his agents, servants, and employees." At any rate, the evidence falls far short of that necessary to establish a conspiracy. No good purpose would be served in detailing the testimony. Suffice it to say that there is not one iota of evidence . . . conversations . . . letters . . . telephone calls . . . that would establish the three men plotted or conspired together to obtain Swank's interest in the company, nor is there any evidence to establish that Kerns or Singer was acting under authority of, or at the direction of Edmonds when they obtained the two releases from Swank. Edmonds testified that he had only known Kerns about two weeks when Kerns proposed to buy his interest in the construction firm of Edmonds and Swank. He stated that he had never employed Kerns, and had never known him very well. There is nothing in the testimony that would prove otherwise. Of course, Edmonds was entirely within his rights in disposing of his interest in the construction company[4].

In addition to the contention that the three men conspired to defraud him, appellant sets out other grounds for reversal. It is alleged that the first release executed by Swank was void for lack of consideration. Swank testified that Kerns did not give him the $3,500, did not exert any efforts to secure a permit for another

[4] Swank testified that Edmonds sent him a note inquiring "* * * if it would be O. K. to sell to Kerns, and I couldn't have stopped him anyway." This was the only contact between the parties after April 4, 1955.

racing track in Arkansas, and in violation of his agreement, relinquished possession of the release without securing a contract for the construction of Southland Racing Corporation. As to whether Kerns carried out these conditions is, in our opinion, immaterial, first, because, as previously stated, it was not shown that Kerns was acting in concert with, or under the direction of Edmonds, or that Edmonds even knew the consideration for the release; second, Swank gave a second release in August (which we consider a ratification of the first release) in consideration of receiving 6,000 shares of Southland Racing Corporation stock[5].

It is next alleged that the releases were invalid because of the actions and conduct of the attorney, Jules Singer. Appellant contends that Singer was in possession of facts relating to the affairs of Southland, and was obligated to convey such information to him (Swank) because of the fiduciary relationship existing between them, before obtaining the second release. Specifically, he contends that Singer knew that Edmonds held 500,000 shares of stock in Southland, and that had he (Swank) been so aware, he would not have settled his 50 per cent share under the original agreement with Edmonds, for 6,000 shares of stock. In the first place, as previously herein set out, there is no evidence that would establish Singer to be Edmonds' agent[6], and Edmonds would not be otherwise responsible for Singer's misdeeds, if such they were. In the next place, it would appear that Swank could have obtained the information as to the number of shares held by Edmonds, since the prospectus of Southland Racing Corporation was available to the public as of July 15, 1955, and showed that Edmonds held 500,000 shares, and that the Southland stock was valued at $1.00 per share. The evidence showed that the prospectus was available at most securities dealers, and that four dealers in Denver had it.

---

[5] This 6,000 shares was part of the 15,000 which Kerns had received from Edmonds.

[6] From the testimony of Swank: "Mr. Digby: Was he representing you, Mr. Swank? A. No. Q. Do you know who he was representing then? Mr. Catlett: Does he know of his own knowledge? Witness: I don't know anything about his status."

In fact, Swank testified that he later learned the amount of stock owned by Edmonds through such a prospectus obtained from the General Investing Corporation, though he did not state when he obtained same. The stock was not immediately given to Swank, but was sent to him in the latter part of April, 1956, after which, he sold it for $5,000. It is inconceivable that Swank did not know, or could not have known, before that time, the number of shares held by Edmonds, since the prospectus had been out for nine months. Appellee contends that Swank, because the future of Southland Racing Corporation was, at the time, rather precarious, decided he had best accept the 6,000 shares of stock for whatever interest he might have and remove himself from the venture. There is some logic in this argument since a movement had been organized to sponsor an amendment to the Constitution of the State of Arkansas to prohibit all parimutuel betting in the state.

Swank, though one of the original incorporators, contended that from the beginning he was not informed as to the structural set up, or how many shares of stock Edmonds would receive. He testified that he had asked Edmonds, Kerns, and Singer, but received no satisfactory answer. It seems to us rather illogical that a successful businessman, who, according to his own testimony, had been refused information by all three parties, and should accordingly have been ''put on guard'', would sign a release without full understanding and knowledge of what he was signing.

Reiterating, we find no evidence that would establish a conspiracy, or establish that Kerns and Singer were acting as agents of Edmonds.

No error appearing, the decree is affirmed.